**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:18-CR-75** |
| | : | |
| **v.** | : | **(Judge Conner)** |
| | : | |
| **TIMOTHY B. RILEY (1),** | : | |
| | : | |
| **Defendant** | : | |

**MEMORANDUM**

Defendant Timothy B. Riley, through counsel, moves for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. 52).  Riley asks the court to reduce his sentence to time served based on his age and medical condition and his concern that the COVID-19 virus[1] may reach the Federal Correctional Institution, Williamsburg ("FCI Williamsburg"), where he is currently incarcerated.  The government opposes compassionate release.  For the reasons that follow, we will deny Riley's motion.

**I.    Factual Background & Procedural History**

The government filed a one-count felony information on February 23, 2018, charging Riley with conspiracy to launder proceeds of drug trafficking in violation of 18 U.S.C. § 1956(h).  (Doc. 1).  The government simultaneously filed a

---

[1] The COVID-19 virus is also known as "severe acute respiratory syndrome coronavirus 2" and "SARS-CoV-2."  *Naming the coronavirus disease (COVID-19) and the virus that causes it*, WORLD HEALTH ORGANIZATION, https://www. who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/naming-the-coronavirus-disease-(covid-2019)-and-the-virus-that-causes-it.  We refer to the virus herein as "the COVID-19 virus" and to the disease it causes as "COVID-19."

plea agreement wherein the parties jointly agreed that the value of the laundered funds reasonably foreseeable to Riley was greater than $150,000. (Doc. 4 ¶¶ 1, 11).

Riley is a former narcotics agent with the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigations, where he was assigned to the Mobile Street Crimes Unit. (See Doc. 19 ¶ 4). The information and guilty plea stem from Riley's involvement, while employed as a narcotics agent, in his cousin's scheme to launder more than $800,000 from $2.5 million in drug proceeds. (Id. ¶¶ 4-10). The specific offense conduct was as follows. On June 25, 2014, Riley's cousin contacted Riley and reported that he was transporting a large quantity of cash in a rental truck and wanted to "get out of the business." (Id. ¶ 5). Riley and other narcotics agents conducted a consent search of the rental truck, recovering, *inter alia*, seven cardboard boxes containing $1,770,650 in cash. (Id. ¶¶ 5-6). After the search, Riley met his cousin at a rest stop and received $18,000 cash from the stolen proceeds. (Id. ¶ 8). Riley received an additional $30,000 in cash in several installments over the next three months. (Id.)

On May 29, 2019, the court sentenced Riley to 36 months' imprisonment to be followed by one year of supervised release. (Doc. 48 at 2-3). The court imposed a $500 fine and $100 special assessment, (id. at 6), and also entered a forfeiture order, (id. at 7; Doc. 51). Riley voluntarily surrendered to the Attorney General on July 25, 2019. (See Doc. 47; see also Doc. 52 at 4; Doc. 61 at 2 (citing Doc. 63 at 218)). He is currently housed at FCI Williamsburg, with a projected release date of February 11, 2022. See *Find an Inmate*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/

inmateloc/ (search for BOP Register Number "76321-067") (last visited June 22, 2020).

On April 16, 2020, Riley's counsel wrote to the warden at FCI Williamsburg and asked the warden to consider releasing Riley to home confinement or moving the court for compassionate release in light of the public health and epidemiological concerns regarding transmission of the COVID-19 virus in an institutional setting. (See Doc. 52 at 8). Five days later, Riley's counsel filed an emergency motion for compassionate release with this court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (See Doc. 52). On April 23, 2020, we entered an order holding Riley's motion in abeyance until the 30-day statutory exhaustion period lapsed. (Doc. 56 ¶ 1). The government subsequently reported that the warden did not receive a letter from Riley's counsel but did receive a copy of that letter from Riley himself on May 15, 2020. (See Doc. 59 ¶ 8). As required by Section 3582(c)(1)(A), we stayed Riley's motion until June 15, 2020—30 days from the warden's confirmed receipt of Riley's request. (Doc. 60). On June 15, 2020, the government filed its opposition brief and supporting exhibits. (Docs. 61, 61-1, 63). Riled filed his reply and a supporting exhibit today.

## II.   **Discussion**

Riley asks the court to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as modified by the First Step Act of 2018, § 603(b), Pub. L. No. 115-391, 132 Stat. 5194, 5239. Section 3582(c)(1)(A)(i) allows the sentencing court to reduce a term of imprisonment if the court finds, after consideration of the Section 3553(a) factors, that "extraordinary and compelling reasons warrant such a

reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).

Both the defendant and the Director of the Bureau of Prisons ("BOP") can move for compassionate release under Section 3582(c)(1)(A).  See id. § 3582(c)(1)(A). But before a defendant can move the court directly, he must either "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or wait for 30 days to lapse from the warden's receipt of a request that the BOP file such a motion.  Id.  The warden denied Riley's request to bring a motion on his behalf within the 30-day period, and we have no indication that this denial has been fully exhausted.  (Doc. 61 at 22).  Nevertheless, the government concedes that Riley "has exhausted his administrative remedies."[2]  (Id.)  We therefore turn to the merits of Riley's motion.

---

[2] We note our disagreement with the government's legal conclusion that Riley has fully exhausted his administrative remedies.  We have previously held that, should the warden respond to a request to bring a motion for compassionate release on a prisoner's behalf within the 30-day timeframe provided by 18 U.S.C. § 3582(c)(1)(A)—thus not allowing 30 days to "lapse" without action—the prisoner "must fully exhaust the warden's denial within the BOP before the court can entertain his motion."  See United States v. Petrossi, No. 1:17-CR-192, Doc. 133 at 2 & n.1 (M.D. Pa. Apr. 28, 2020) (collecting cases).  Moreover, the government's concession in this case directly contradicts its position in Petrossi.  See id., Doc. 139 at 4 n.2, 7-14 & n.3 (M.D. Pa. May 26, 2020).  There, the government acknowledged that competing interpretations of the compassionate release statute exist and stated that, in the absence of binding circuit authority, "the U.S. Attorney for the Middle District of Pennsylvania has determined that . . . this Court's construction of § 3582(c)(1)(A) [regarding exhaustion] is correct."  Id. at 4 n.2, 7.  Nonetheless, the government may waive the defense of statutory exhaustion by explicitly conceding it, even if that concession is based on "a flawed legal conclusion."  See Sharrieff v. Cathel, 574 F.3d 225, 229 (3d Cir. 2009).  In light of the government's explicit concession on exhaustion, we conclude that the government has waived exhaustion in Riley's case.

### A.      Extraordinary and Compelling Reasons

Riley asserts that his age, medical condition, and vulnerability to serious complications from COVID-19 combine to establish extraordinary and compelling reasons to grant compassionate release.  Riley avers that he is 50 years old, suffers from "severe Type-1 Diabetes and heart disease," and "has suffered serious medical episodes due to his diabetes while incarcerated."  (Doc. 52 at 4).  He concludes that "[t]hese factors make him more vulnerable to the current Covid-19 Pandemic than the average prisoner," and that this unique vulnerability necessitates immediate release.  (Id. at 4).  Although we are sympathetic to Riley's concerns, we do not believe compassionate release to be appropriate in this case.

Congress delegated responsibility for defining "extraordinary and compelling reasons" for compassionate release to the United States Sentencing Commission.  See 28 U.S.C. § 994(t).  In Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines, the Commission identifies criteria for determining eligibility for a sentence reduction.[3]  See U.S.S.G. § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).  Eligible circumstances include terminal illness as well as "a serious physical or medical condition" or "deteriorating physical or mental health because of the aging process" if the impairment "substantially

---

[3] We recognize that this policy statement has not been amended since passage of the First Step Act.  See United States v. Kelly, No. 3:13-CR-59, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (quoting United States v. Perdigao, No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020)).  We agree with those courts to observe that Section 1B1.13 still "provides helpful guidance" even if it is no longer controlling.  Id. (quoting United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019)).

diminishes" the ability to provide self-care within a correctional facility and is one from which the defendant "is not expected to recover."  <u>Id.</u> at cmt. n.1(A)(i), (A)(ii)(I), (A)(ii)(III).  A defendant may also be eligible for an age-based reduction if he is 65 or older, is experiencing "serious deterioration in physical or mental health because of the aging process," and has served the lesser of 10 years or 75 percent of his term of imprisonment.  <u>Id.</u> at cmt. n.1(B).  The Application Note closes with a catchall, authorizing a reduction when the Director of the BOP identifies in a particular case "an extraordinary or compelling reason other than, or in combination with," the above.  <u>Id.</u> at cmt. n.1(D).[4]

The BOP has also developed internal criteria for addressing prisoner requests for compassionate release.  Of the many considerations identified in the BOP's policy statement, the only criteria potentially applicable to Riley are those concerning prisoners with a "debilitated medical condition."  <u>See</u> FED. BUREAU OF PRISONS, PROGRAM STATEMENT 5050.50: COMPASSIONATE RELEASE/REDUCTION IN SENTENCE: PROCEDURES FOR IMPLEMENTATION OF 18 U.S.C. §§ 3582 AND 4205(G) at 5, https://www.bop.gov/policy/progstat/5050_050_EN.pdf (Jan. 17, 2019).  The statement provides that compassionate release should be considered for prisoners "who have an incurable, progressive illness or who have suffered a debilitating injury from which they will not recover."  <u>Id.</u>  Specifically, the BOP will consider

---

[4] Riley does not explicitly invoke any of these criteria.  (<u>See generally</u> Doc. 52).  Because Riley is under the age of 65, has not served 10 years or 75% of his prison term, and is not terminally ill, we assume he is proceeding on the theory that his medical diagnoses qualify as "serious medical conditions."  <u>See</u> U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

compassionate release if a prisoner is "[c]ompletely disabled, meaning the [prisoner] cannot carry on any self-care and is totally confined to a bed or chair; or [c]apable of only limited self-care and is confined to a bed or chair more than 50% of waking hours." Id.

Of course, neither the Sentencing Commission nor the BOP contemplated a deadly global pandemic when crafting these criteria. Fortunately, the Third Circuit Court of Appeals had an early opportunity to provide guidance to district courts facing an inrush of compassionate release motions. In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), issued on April 2, 2020, the court observed that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison . . . cannot independently justify compassionate release, especially considering BOP's statutory role and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).[5] Over the past few months, district courts in both the pretrial and civil detention contexts likewise have opined that a generalized fear of the virus reaching a given institution is not a proper basis for release. See Ndir v. Doll, No. 1:20-CV-705, ___ F. Supp. 3d ___, 2020 WL 2306761, at *5 (M.D. Pa. May 8, 2020) (Conner, C.J.) (collecting cases in civil immigration detainee context); D.M. v. Barr, No. 20-4031, 2020 WL 1969893, at

---

[5] The Third Circuit in Raia held that motions under Section 3582(c)(1)(A) cannot be brought directly in the court of appeals and that the defendant's failure to exhaust administrative remedies would render remand futile. See Raia, 954 F.3d at 596-97. Anything the court said about the merits of the motion, after its threshold jurisdictional determination, is arguably dicta. We are nonetheless persuaded by and agree with the court's observations as to the availability of compassionate release during the COVID-19 pandemic.

*5 (D.N.J. Apr. 24, 2020) (same); <u>United States v. Anderson</u>, No. 1:19-CR-239, 2020 WL 1953612, at *4, 5 (M.D. Pa. Apr. 23, 2020) (same in pretrial detention context). In other words, something more than a generalized concern regarding COVID-19 is required.

Riley contends that his age and medical condition supply the requisite "something more." The Centers for Disease Control and Prevention do identify both diabetes and serious heart conditions as medical issues that "may put people at higher risk of severe illness from COVID-19." *Coronavirus Disease 2019 (COVID-19): At Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last reviewed May 14, 2020). But <u>Raia</u> suggests that this unique susceptibility, absent any likelihood of direct exposure to the virus, is not enough. Francis Raia was 68 years old, and, like Riley, had preexisting medical conditions that included diabetes and heart complications. <u>Raia</u>, 954 F.3d at 596. The Third Circuit acknowledged "the risks that COVID-19 poses in the federal prison system, *particularly for inmates like Raia*," but nonetheless concluded that the "possibility" of the virus reaching his institution could not justify compassionate release. <u>Id.</u> at 597 (emphasis added).

Riley's circumstances are virtually identical to Raia's. As of this writing, the BOP reports that no prisoner or staff member has tested positive for the COVID-19 virus at FCI Williamsburg. <u>See</u> *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (select "Full breakdown and additional details") (last updated June 21, 2020, 3:00 p.m.). And this is not for want of testing: to date, 63

of 1231 prisoners have been tested for the virus.  See id. (select "Learn more about the data and view individual facility stats"); *Population Statistics*, FED. BUREAU OF PRISONS, https://www.bop.gov/mobile/about/population_statistics.jsp (last visited June 22, 2020).  We have no indication that Riley has otherwise been directly or indirectly exposed to the virus.

Nor is there any reason to believe that the BOP cannot adequately treat Riley's medical conditions.  To the contrary, 331 pages of prison medical records establish that Riley is seen frequently by prison medical staff and has routine visits with an outside cardiologist for his heart condition.  (See generally Doc. 68).  Prison medical staff work closely with Riley to monitor and attempt to control his blood sugar levels.  (See generally id.).  The records also show that Riley has occasionally proved to be a difficult patient, refusing medical tests and being unreceptive to diet and exercise counseling.  (See id. at 9, 34, 254, 255, 286, 287).

Riley's counsel alleges that Riley has experienced "serious medical episodes" while incarcerated.  (Doc. 52 at 4; Doc. 65 at 2).  Our review of the medical records reveals that Riley complained of frequent urination in December 2019 for which he was prescribed medication, (Doc. 63 at 55), although that medication was stopped after Riley complained of side effects, (id. at 39, 51).  Riley complained of diarrhea and vomiting in January of this year which has since resolved.  (Id. at 29-31).  The most serious incident that we can discern is a "fall/syncopal episode from blood sugar" in February of this year, as a result of which Riley has since experienced right shoulder pain.  (Id. at 5-6).  An x-ray in April and an MRI three weeks ago revealed no acute fracture, no acute malalignment, no concerning bone marrow

edema or bone mass, and no osseous erosive disease.  (See id. at 252, 328-29).  The

BOP's treatment and diagnostic efforts demonstrate that medical staff are taking

Riley's medical issues seriously and are responding to them reasonably.  On these

facts, we cannot conclude that the possibility that the COVID-19 virus *might* reach

FCI Williamsburg—whether on its own or in combination with Riley's medical

condition—is an "extraordinary and compelling" reason for release.

Moreover, the BOP has undertaken extensive efforts to prevent the result

that Riley fears.  It has suspended most visitation, implemented screening measures

for staff and prisoners, and reduced contractor visits to essential services.  See *BOP

Implementing Modified Operations*, FED. BUREAU OF PRISONS, https://www.bop.gov

/coronavirus/covid19_status.jsp (last visited June 22, 2020).  Prisoner movement

between facilities has been "suspended with limited exceptions."  Id.  Movement

within facilities is restricted as well, with prisoners remaining in their cells except,

"to the extent possible," for mental health and medical treatment; certain programs

and services; and access to commissary, laundry, showers, and telephones.  See

FED. BUREAU OF PRISONS, BUREAU OF PRISONS COVID-19 ACTION PLAN: PHASE FIVE,

https://www.bop.gov/resources/news/pdfs/20200331_press_release_action_plan_5

.pdf (Mar. 31, 2020) (implementing movement restrictions through April 14, 2020);

FED. BUREAU OF PRISONS, BUREAU OF PRISONS COVID-19 ACTION PLAN: PHASE SIX,

https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6

.pdf (Apr. 14, 2020) (extending movement restrictions through May 18, 2020); FED.

BUREAU OF PRISONS, BUREAU OF PRISONS COVID-19 ACTION PLAN: PHASE SEVEN,

https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited June 22, 2020) (extending movement restrictions through June 30, 2020).

The BOP has also ramped up exercise of its authority under 18 U.S.C. § 3624(c)(2)—recently expanded by the Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020)— to release certain vulnerable prisoners to home confinement. See *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/. The BOP's published statistics indicate that it has increased use of home confinement by 155% in the past three months. Id. The government reports that the BOP does not consider Riley to be an appropriate candidate for release to home confinement because, *inter alia*, he "has served only 30% of his sentence and has more than 18 months remaining on his sentence" and "[h]is home plan has not been verified." (Doc. 61 at 18). That those most familiar with Riley's circumstances do not believe them to warrant immediate release supports our own assessment that Riley has not established an extraordinary and compelling basis for compassionate release.

## B.      Section 3553(a) Factors

Even if we were to agree that extraordinary and compelling circumstances

exist, our analysis must still be informed by the Section 3553(a) factors.[6]  See 18

U.S.C. § 3582(c)(1)(A).  Riley was ordered to self-surrender on July 25, 2019, (see

Doc. 47), and at this point has served less than one year of the three-year sentence

imposed by this court.  His projected release date, accounting for expected good-

time credit, is February 11, 2022.

The Section 3553(a) factors militate against more than halving Riley's

sentence.  We found at the time of sentencing, and reaffirm now, that a 36-month

sentence reflects an appropriate balancing of various mitigating and aggravating

considerations.  Riley willingly accepted $48,000 in stolen drug proceeds from his

cousin, who he knew to be large-scale marijuana trafficker.  In doing so, Riley

abdicated his responsibilities as a law enforcement officer and abused the public

trust.  Riley's sentence at the low end of the Guidelines range already reflects the

court's consideration of the nonviolent nature of his crime and his status as a first-

---

[6] The Section 3553(a) factors are (1) "the nature and circumstances of
the offense and the history and characteristics of the defendant"; (2) "the need
for the sentence imposed . . . to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for the offense; . . . to afford
adequate deterrence to criminal conduct; . . . to protect the public from further
crimes of the defendant; and . . . to provide the defendant with needed educational
and vocational training, medical care, or other correctional treatment in the most
effective manner"; (3) "the kinds of sentences available"; (4) the kinds of sentence
and sentencing range recommended by the United States Sentencing Guidelines;
(5) pertinent policy statements issued by the United States Sentencing Commission;
(6) "the need to avoid unwarranted sentencing disparities" among similarly situated
defendants; and (7) the need for restitution.  18 U.S.C. § 3553(a).

time offender.  On balance, the Section 3553(a) factors support leaving Riley's existing sentence intact.

**III.    Conclusion**

We are not unsympathetic to Riley's concern—or to any medically vulnerable prisoner's concern—that the COVID-19 virus may reach the institution where he is housed.  But that concern does not alone supply an "extraordinary and compelling" reason for a sentence reduction that would have the effect of reducing Riley's prison term by more than half.  Nor does it counterbalance the aggravating Section 3553(a) factors revisited *supra* or the fact that Riley's sentence already sits at the bottom of the Guidelines range.

For all of these reasons, the court will deny Riley's motion (Doc. 52) for compassionate release and reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Mindful of the rapidly evolving nature of the COVID-19 pandemic and the potential for hotspot outbreaks, our denial will be without prejudice to Riley's ability to refile the motion if, for example, the COVID-19 virus is detected within FCI Williamsburg or Riley experiences a serious deterioration of his physical health.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    June 22, 2020